UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JUAN PAGAN, Pro Se, | ) | CIVIL ACTION |
| Plaintiff | ) | No. 09-11114-RGS |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOWARD CLARKE and PETER ST. AMAND, | ) | |
| Defendants | ) | |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION
TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

August 20, 2010

BOAL, U.S.M.J.

Plaintiff Juan Pagan ("Pagan") brought this 42 U.S.C. § 1983 action pro se against

Howard Clarke, Commissioner of Correction, and Peter St. Amand, Superintendent of MCI-

Cedar Junction, in both their official and individual capacities. Pagan alleges that Defendants

violated his Eighth and Fourteenth Amendment rights when they withdrew funds from his

personal account as restitution for disciplinary violations. Pagan also alleges that Defendants

violated his Eighth and Fourteenth Amendment rights because the amount of restitution for his

disciplinary offenses was excessive and unreasonable and prevents him from purchasing

cosmetic and/or hygiene items from the prison canteen.

The matter is presently before the court on the Defendants' unopposed motion to dismiss,

or, in the alternative, for summary judgment, by which Defendants seek the dismissal of all of

Pagan's claims. Defendants contend that they have not violated Pagan's rights because:

1

(i) prison officials have authority to impose restitution as a disciplinary sanction; and (ii) due process was satisfied because prison officials properly conducted a disciplinary hearing before withdrawing funds from Pagan's account.  Defendants also assert that Pagan's inability to purchase hygiene items cannot as a matter of law constitute a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.[1]

For the following reasons, this court recommends to the District Judge to whom this case is assigned that the Defendants' motion be ALLOWED.  Because Defendants have not addressed Plaintiff's claim pursuant to the Eighth Amendment's Excessive Fines clause, this court does not recommend dismissal of the complaint in its entirety.

## PROCEDURAL POSTURE AND FACTS[2]

Defendants filed the instant motion on October 29, 2009.  On November 24, 2009, Chief Magistrate Judge Dein, to whom the case was then referred, ordered Pagan to file an opposition by December 18, 2009.  After Pagan failed to file an opposition, on January 4, 2010, Chief Magistrate Judge Dein ordered that Pagan file his opposition by February 5, 2010 or the motion would be considered unopposed.  Pagan filed no opposition.  Accordingly, this court considers the motion unopposed and accepts as true the uncontested facts set forth in Defendants' Concise

---

[1]Defendants also claim that they are entitled to qualified immunity.  Because Pagan has failed to establish a constitutional violation, the court does not need to address this particular issue with respect to the claims that are subject to Defendants' motion.  Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005).

[2]The facts are derived from the exhibits attached to the complaint (Docket No. 1) ("Pl. Ex. _"); Defendants' Concise Statement of Undisputed Material Facts in Support of Their Motion to Dismiss, or in the Alternative, for Summary Judgment (Docket No. 11) ("Def. Facts"); and the exhibits and affidavits attached to the Defendants' present motion (Docket No. 12) ("Def. Ex. _").

Statement of Undisputed Material Facts in Support of Their Motion to Dismiss (Docket No. 11) ("Def. Facts"). <u>See</u> Local Rule 56.1 ("Material facts of record set forth in the statement...will be deemed for purposes of the motion admitted by opposing parties unless controverted by the statement required to be served by opposing parties.").

Although the facts are uncontested, this court must view the record in the light most favorable to Pagan as the non-moving party. <u>See Aguiar-Carrasquillo v. Agosto-Alicea</u>, 445 F.3d 19, 25 (1st Cir. 2006). The material facts, when viewed in accordance with this standard, are summarized as follows.

## I.     Department of Correction Substance Abuse Policy and Regulations

At the time that he filed the instant complaint, Pagan was housed in the Department Disciplinary Unit ("DDU") at MCI-Cedar Junction, which is run by the Massachusetts Department of Correction ("MDOC"). Affidavit of Dale Bissonnette at ¶ 3 ("Bissonnette Aff."), Def. Ex. 4. MDOC policy number 103 DOC 525 governs inmate substance abuse monitoring and testing for the MDOC. The MDOC maintains a zero tolerance policy for substance abuse by all inmates within its custody. Accordingly, all inmates are subject to substance abuse monitoring. 103 DOC 525.02(A), (B). If an initial screening tests positive for illegal drugs and alcohol, the prison will send the test to an outside laboratory to confirm the findings of the initial screen. 103 DOC 525.06; 103 DOC 525.09(D)(12)(a). An inmate is not charged for a laboratory confirmation test that yields a negative result. 103 DOC 525.08 (D)(2). If an inmate is found guilty after a disciplinary hearing for, <u>inter alia</u>, testing positive for illegal drugs or alcohol, the unauthorized possession, accumulation or misuse of prescribed medication, or the making or possession of intoxicants or alcohol, sanctions may include restitution regarding the

cost of the confirmatory test and substance abuse monitoring for a period of one to three years, depending on the number of previous offenses. 103 DOC 525.08 (A)(1), (5), (7), (8), (D), (D)(2), (E).

Prison regulations provide that an inmate's personal account will be automatically frozen upon the entering of a restitution sanction. 103 CMR 405.17(1). Restitution sanctions are authorized if they are supported by a preponderance of the evidence. 103 CMR 430.25.

If an inmate at MCI-Cedar Junction cannot pay the full restitution sanction, the prison may freeze the inmate's account. Bissonette Aff. at ¶ 8. An inmate may enter into a Restitution Agreement, or payment plan, with the Superintendent. Id. This plan effectively lifts the freeze on the inmate's account and thereby allows him to utilize some of the funds in his account. Bissonette Aff. at ¶ 8. Pagan entered into such an agreement with Defendant St. Amand on June 12, 2009, approximately two weeks before Pagan filed his complaint. Bissonette Aff. at Ex. B. Pagan's restitution agreement provides that one half of the funds in his personal account will be applied to his restitution sanction, as well as any future income. Pagan was allowed to spend the remaining half of his funds. Id.

MDOC regulations provide that in order to be considered indigent, an inmate must have less than $10 in his account and have not had more than $10 in his account in the preceding 60 days. 103 CMR 481.06; Bissonette Aff. at ¶ 7. In addition, the Superintendent, in his discretion, may designate an inmate indigent if he has less that $2 in his account or as he deems appropriate. Id. Indigent inmates housed at DDU receive two tubes of toothpaste, two bars of soap, a pad of lined paper, ten envelopes, two flex pens, two batteries and one deodorant once a week at no cost. Bissonette Aff. at ¶ 6. DDU inmates receive a comb and an emery board once

a month at no cost.  Id.  There is no indication in the record as to whether Pagan claimed

indigency or was deemed indigent.

## II.     Pagan's Disciplinary Hearings

On February 17, 2009, Pagan received disciplinary report number 155418, which charged

him with "receiving a positive test for use of unauthorized drugs, alcohol, or other intoxicants"

and refusing a direct order by a staff member to sign the consent form to have his urine sent to an

outside laboratory for testing.  Def. Ex. 5.  On March 27, 2009, Pagan plead guilty to the offense

and waived his right to a hearing.  Id.  Pagan was sanctioned with the loss of phone privileges for

seventy-five days.  Id.  The charge regarding the refusal of a direct order was dismissed.  Id.

Pagan did not receive a restitution sanction for this offense.  Id.

On February 17, 2009, Pagan also received disciplinary report number 155413, which

charged him with "making, introducing or transferring intoxicants and alcohol, or possession of

ingredients, equipment, formula or instructions that are used in making intoxicants and alcohol."

Def. Ex. 1.  Specifically, Pagan was found to have fermented fruit and juices in his cell and

disposing of these items when correctional officers notified him that they were going to search

his cell.  Id.  On February 19, 2009, Pagan was served with notice of a disciplinary hearing

regarding disciplinary report number 155413, along with a notice of intention to collect

restitution if Pagan was found guilty of the disciplinary infraction.  Id.  On March 27, 2009, a

hearing was conducted at which Pagan was provided an opportunity to make a statement and to

call witnesses on his behalf.  Id.  The hearing officer found Pagan guilty of the offense by a

preponderance of the evidence and sanctioned him to restitution of $180 for substance abuse

monitoring for one year in compliance with 103 DOC 525.08.  Id.  Pagan appealed the guilty

finding on the grounds that the incident was the same as disciplinary report 155418.  Def. Ex. 5.

Defendant St. Amand denied this appeal.  Id.

On March 27, 2009, Pagan received disciplinary report number 158690, which charged

him with unauthorized accumulation/misuse of prescription medication because a correctional

officer discovered prescription medication in his cell.  Def. Ex. 2.  On March 30, 2009, Pagan

was served with notice of a disciplinary hearing in conjunction with disciplinary report 158690,

along with a notice of the intention to collect restitution if Pagan was found guilty of the

disciplinary infraction.[3]  Id.  On April 10, 2009, a hearing was conducted at which time Pagan

was provided an opportunity to make a statement and to call witnesses on his behalf.  Id.  The

hearing officer found Pagan guilty of the offense by a preponderance of the evidence and

sanctioned him to restitution for substance abuse monitoring for one year in compliance with 103

DOC 525.08.  Id.  Pagan appealed the guilty finding, although in his appeal he admitted to

"hold[ing] my meds."  Id.  Defendant St. Amand denied the appeal.  Id.

## STANDARD OF REVIEW

Defendants have filed a motion to dismiss, or in the alternative, for summary judgment.

Pursuant to Fed. R. Civ. P. 12(d), if, on a motion to dismiss for failure to state a claim upon

which relief can be granted, "matters outside the pleadings are presented to and not excluded by

the court, the motion must be treated as one for summary judgment under Rule 56."  In the

instance case, Defendants have submitted and relied on evidence outside the pleadings in support

---

[3] Because this was Pagan's second offense, he should have been required to pay restitution for two years of substance abuse testing pursuant to 103 DOC 525.08.  However, the disciplinary officer erroneously indicated on the notice that this was Pagan's first offense, and therefore he was charged only with one year.  Def. Ex. 2; Def. Facts 11, n. 1.

of their arguments, and this court will consider such evidence, to the extent that it is relevant, in connection with the pending motion.  Therefore, this court deems the motion as one for summary judgment.  See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (district court has discretion to convert motion to dismiss into one for summary judgment if court chooses to consider materials outside the pleadings).

Summary judgment is appropriate when "the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  Sanchez v. Alvarad, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted).  A material fact is one which has "the potential to affect the outcome of the suit under the applicable law."  Id.  (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial.  See id. at 324.  "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  "If, after viewing the record in the non-moving party's favor, the Court

determines that no genuine issue of material fact exists and the moving party is entitled to

judgment as a matter of law, summary judgment is appropriate."  Walsh v. Town of Lakeville,

431 F. Supp. 2d 134, 143 (D. Mass. 2006).  Where the plaintiff is proceeding pro se, the court

construes his allegations liberally.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A court,

however, will not "conjure up unpled allegations" to state an actionable claim.  McDonald v.

Hall, 610 F.2d 16, 19 (1st Cir. 1979).

## DISCUSSION

### I.      42 U.S.C. § 1983

Section 1983 is a vehicle through which individuals may sue certain persons acting under

the color of state law for deprivation of federally assured rights.  Gagliardi v. Sullivan, 513 F.3d

301, 306 (1st Cir. 2008).  Specifically, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
> any State or Territory or the District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suite in equity, or other proper
> proceeding for redress... .

42 U.S.C. § 1983.  Section 1983 is "not itself a source of substantive rights, but merely provides

a method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386,

393-4 (1989).

Pagan alleges that Defendants violated Section 1983 by violating his Eighth and

Fourteenth Amendment rights when they withdrew funds from his prison account.  "A claim

under Section 1983 has two essential elements.  First, the challenged conduct must be

attributable to a person acting under color of state law" and "second, the conduct must have

worked a denial of rights secured by the Constitution or by federal law."  Soto v. Flores, 103

F.3d 1056, 1061 (1st Cir. 1997).  For purposes of the Defendants' motion, there is no dispute that

the Defendants were acting in their official capacities at all relevant times and were therefore

acting under color of state law.  However, Defendants contend that they did not deprive Pagan of

any constitutional rights.

### A.      Official Capacity Claim under 42 U.S.C. § 1983

Pagan has sued Defendants in both their individual and official capacities.  However, a

state official acting in his official capacity cannot be sued for damages in a Section 1983 action.

Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698, 700 (1st Cir. 1995);

Rafferty v. Cranston Pub. Sch. Comm, 315 F.3d 21, 28 (1st Cir. 2002).  Therefore, Pagan cannot

pursue money damages against Defendants in their official capacity for his Section 1983 claims

and those claims should be dismissed.[4]

### B.      Claim against Defendant Clarke in his Individual Capacity

Pagan's claims against Defendant Clarke in his individual capacity fare no better.

Plaintiff's complaint is devoid of any allegation that Clarke personally took any action against

Pagan.  To the extent that Pagan brings a claim against Clarke in his supervisory capacity, this

claim is barred because officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-9

(2009).  Pagan's claim against Clarke in his individual capacity should therefore be dismissed.[5]

---

[4]To the extent that Pagan intended to sue the Department of Correction, such claims must also be dismissed, as the Department of Correction is not a "person" withing the meaning of 42 U.S.C. § 1983.  Will v. Michigan Dept. Of State Police, 491 U.S. 58 (1989); Pennhurst State School and Hospital v. Halderman, 465 U.S. 89 (1984).

[5]Defendants correctly note that there are no allegations regarding specific acts by Defendant St. Amand in the body of the complaint.  Def. Br. at 7.  However, in the documents

### C.     Due Process Claim

Pagan alleges that Defendants do not have the authority to seize the funds in his personal account as restitution and that Defendants' doing so violates his constitutional rights. Complaint, ¶ 12.  To the extent that Pagan attempts to make a claim that his Due Process rights were violated, such claim fails.

The Due Process clause of the Fourteenth Amendment requires that there be notice and an opportunity for a hearing before a person is deprived of a protected property interest.  Logan v. Zimmerman, 455 U.S. 422, 428 (1982).  Even when a liberty interest is implicated, procedural due process only requires that a prisoner receive notice of the disciplinary charges, have an opportunity (if consistent with institutional safety and correctional goals) to call witnesses and present evidence in his defense, and receive a written statement by the fact-finder of the evidence relied upon and the reasons for the disciplinary action.  Wolff v. McDonnell, 418 U.S. 539, 563-6 (1973).  Although Pagan has a protected property interest in his prison account,  Street v. Maloney, 1990 U.S. App. LEXIS 22996 at *14 (1st Cir. December 28, 1990); see also Ciampi v. Commissioner of Correction, 452 Mass. 162, 170-1 (2008), the removal and/or impounding of funds as restitution is authorized by the MDOC regulations governing prison disciplinary proceedings, 103 CMR sec. 430 et seq. and 103 CMR 405.17, and the MDOC substance abuse policy, 103 DOC 523, which provide the framework for the procedural due process accorded Pagan.

---

submitted by Defendants, there are numerous references to St. Amand.  See Def. Ex. 1, 2, 5; Bisonnette Aff. Ex. B.  Those documents suggest that Defendant St. Amand may have had a direct role in the case.  Accordingly, I do not recommend dismissal of the claims against Defendant St. Amand in his individual capacity on this basis.

The First Circuit addressed a similar situation in <u>Street v. Maloney</u>, 1990 U.S. App. LEXIS 22996 (1st Cir. December 28, 1990).  In <u>Street</u>, the plaintiff alleged that the freezing of his prison account and the imposition of a restitution order violated Due Process.  <u>Id</u>. at * 14. The First Circuit held that there was no constitutional violation because the plaintiff's disciplinary hearing provided him with the requisite predeprivation hearing and afforded him sufficient notice.  <u>Id.</u> at *15-17.

Like the plaintiff in <u>Street</u>, Pagan's disciplinary hearings provided him with the protections necessary to prevent a violation of Due Process.  At both hearings, as described <u>supra</u>, Pagan was provided notice of the charges, including a written statement regarding the reasons for the disciplinary action and the evidence relied upon, and the opportunity to call witnesses and provide evidence in his defense.  Def. Ex. 1, 2.  Morever, the record contains evidence that supports the guilty finding in each case.  <u>Id.</u>  Thus, Pagan received due process before the deprivation of his property through the disciplinary hearings and subsequent appeals. <u>Id</u>.  His claim therefore fails as a matter of law.

**D.      Eighth Amendment Claims**

**1.      Conditions of Confinement**

Pagan alleges that he cannot purchase cosmetic and/or hygienic items from the canteen because Defendants froze his account and have not provided him with these items free of charge. Complaint, ¶¶ 10, 14.  Pagan alleges that this action constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.  Complaint, ¶14.

Under the Eighth Amendment, prisoners are entitled to adequate shelter, including the "minimal civilized measure of life's necessities."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)

(internal citation omitted).  In order for a prisoner to establish that he has been subjected to

unconstitutional conditions of confinement in violation of the Eighth Amendment's prohibition

against cruel and unusual punishment, a plaintiff must establish that: (i) from an objective

standpoint, the conditions of his confinement deny him the minimal measure of necessities

required for civilized living; and (ii) from a subjective standpoint, the defendant was deliberately

indifferent to his health or safety.  Suprenant v. Cesar Rivas, 424 F.3d 5, 18-19 (1st Cir. 2005),

citing Farmer v. Brennan, 511 U.S. 825, 834 (1994).  "Deliberate indifference" is a mental state

similar to criminal recklessness.  Id.

       Extreme deprivations are required to make out a conditions of confinement claim.

Hudson v. McMillan, 503 U.S. 1, 8-9 (1992).  Because "routine discomfort is part of the penalty

criminal offenders pay for their offense against society, only those deprivations denying the

minimal civilized measure of life's necessities are sufficiently grave to form the basis of an

Eighth Amendment violation."  Id. (internal citations omitted).  Pagan's conclusory complaint

that his alleged lack of hygienic products prevents him from "keep[ing] up his hygienes (sic)"

does not allege a deprivation sufficient to establish a cognizable Eighth Amendment claim.

Pagan has not alleged how he has been injured by the alleged violation and has not provided any

information regarding the duration and frequency of the alleged harm.  See e.g. Gross v. Koury,

78 Fed. Appx. 690, 694-5 (10th Cir. 2003) (inmate's Eighth Amendment claim was insufficient

because he failed to claim that he suffered any actual injury resulting from an alleged lack of

toothpaste and soap); Johnson v. Texas Board of Criminal Justice, 281 Fed. Appx. 319, 322 (5th

Cir. 2008) (conditions where inmate could take a shower once per day, was provided soap, and

received a change of clothing every day that he could wash in a small wash basin and toilet are

not extreme so as to state a viable Eighth Amendment claim); <u>Johnson v. Poulin</u>, 2008 U.S. Dist.

LEXIS 33973 at *25 (D.N.H. April 24, 2008) (claim failed because inmate did not present

evidence to substantiate claim that lack of soap caused rash or show how this constituted serious

harm); <u>Carey v. Wrenn</u>, 2007 U.S. Dist. LEXIS 47701 at *12-13 (D.N.H. May 15, 2007)

(inmate's allegation that defendants forced him to use rubber bands as dental floss and provided

him with toothpaste that contained "carcinogenic" saccharine insufficient to state a claim for

Eighth Amendment violation, particularly where the inmate did not provide any facts as to the

frequency, duration and magnitude of his problems or any ensuing constitutional harm); <u>Beltran</u>

<u>v. O'Mara, Jr.</u>, 405 F. Supp 2d 140, 161 (D.N.H. 2005) (inmate's short delay in receiving toilet

paper and the lack of any evidence regarding the frequency of the absence does not in itself

amount to a constitutional violation).[6]

Pagan has also failed to create a genuine issue of material fact to establish the subjective

component of the test, namely that Defendants themselves acted with a sufficiently culpable state

of mind, <u>i.e.</u> that they acted with deliberate indifference to his health or safety.  Pagan makes no

allegations regarding Defendants' mental states and does not claim that Defendants' actions were

deliberate or reckless.  He merely states that his inability to purchase hygiene and/or cosmetic

products because of the amount of restitution has caused him pain and suffering.  Complaint,

---

[6]Plaintiff makes a conclusory allegation that the Defendants do not provide cosmetic and/or hygiene products to indigent defendants.  Complaint, ¶ 14.  However, indigent inmates housed in DDU receive two tubes of toothpaste, two bars of soap, a pad of lined paper, ten envelopes, two flex pens, two batteries and one deodorant once a week at no cost and a comb and an emery board once a month at no cost.  Bissonnette Aff. ¶ 6. Pagan has not provided any evidence to establish that he qualifies as an indigent inmate under the relevant regulations, that Defendants have not classified him as such, and that Defendants have failed to provide him with these items.

¶ 10.  His claim therefore fails.

### 2.    Excessive Fines

Pagan also alleges a violation of the Excessive Fines clause of the Eighth Amendment.

Specifically, Pagan alleges that Defendants violated his Eighth Amendment rights because the

amount of the fines and/or restitution for his disciplinary offenses and/or testing ($360 in total)

was excessive.  Complaint, ¶¶ 12, 13.  Defendants do not address this claim in their motion.

Accordingly, this claim survives.

## II.    Prison Litigation Reform Act

Defendants move to dismiss on the basis of the Prison Litigation Reform Act, 42 USC

§1997e ("PLRA").  Defendant's Memorandum of Law (Docket 12) ("Def. Brief") at 8-11.  The

PLRA provides in relevant part that "[n]o Federal civil action may be brought by a prisoner...for

mental or emotional injury suffered while in custody without a prior showing of physical injury."

42 USC § 1997e(e).  Defendants are correct that Pagan does not allege any physical injury as a

result of the alleged deprivation.  Indeed, he alleges only mental distress.  Complaint, ¶ 14.

Although the First Circuit has not addressed this issue, courts in this district as well as other

circuit courts have held that a complaint that seeks compensatory damages for mental or

emotional injury but fails to allege a sufficient physical injury should be dismissed under the

PLRA.  See Restucci v. Clarke, 669 F. Supp. 2d 150, 159 (D. Mass. 2009); Carrasquillo-Oliveras

v. Comm. of Puerto Rico, 2010 U.S. Dist. LEXIS 35223 **9-10 (April 9, 2010 D.P.R.); but see

Shaheed-Muhammad v. Dipaolo, 393 F. Supp. 2d 80, 107-8 (D.Mass 2005).

However, in this case, Pagan not only seeks compensatory damages but also punitive

damages and injunctive relief.  Complaint, ¶ 5.  The PLRA does not appear to affect Pagan's

request for injunctive relief or punitive damages.  See Restucci v. Clarke, 669 F. Supp. 2d 150,

159 (D. Mass. 2009); Boulanger v. U.S. Marshals Service, 2009 U.S. Dist. LEXIS 124341 *51

(March 25, 2009 D.N.H.).  Accordingly, this court recommends only that Pagan's claims for

compensatory relief be dismissed on the basis of this argument and not his other claims.

## RECOMMENDATION

For all of the reasons detailed above, this court recommends that Defendants' Motion to

Dismiss, or in the Alternative, For Summary Judgment (Docket 10) be ALLOWED.  Because

Defendants have not addressed Plaintiff's claim pursuant to the Eighth Amendment's Excessive

Fines clause, this court does not recommend dismissal of the complaint in its entirety.

## REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party

who objects to these proposed findings and recommendations must file a written objection

thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and

Recommendation.  The written objections must specifically identify the portion of the proposed

findings, recommendations or report to which objection is made and the basis for such

objections.  The parties are further advised that the Unites States Court of Appeals for this

Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further

appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir.

1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v.

Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-

79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn,

474 U.S. 140, 153-4, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v.

Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36

F.3d 143, 150-1 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).


/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge